UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

WILBUR C. TRAFTON.

       Plaintiff,                                          Case No.: 08-C-0099

-vs-

ROCKETPLANE KISTLER, INC.,
ROCKETPLANE LIMITED, INC.,
ROCKETPLANE, INC., FRENCH
PROPERTIES L.L.C. AND GEORGE
D. FRENCH JR.,

       Defendants.

---

RANDOLPH H. BRINKLEY

       Plaintiff,                                          Case No.: 08-C-0642

-vs-

ROCKETPLANE KISTLER, INC.,
ROCKETPLANE LIMITED, INC.,
ROCKETPLANE, INC., FRENCH
PROPERTIES L.L.C. AND GEORGE
D. FRENCH JR.,

       Defendants.

---

## DEFENDANTS MEMORANDUM
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, George D. French., Rocketplane Kistler, Inc., Rocketplane Limited, Inc., Rocketplane, Inc.and French Properties, LLC, by and through his attorneys, Liebmann, Conway, Olejniczak & Jerry, S.C., presents this memorandum in support of his Motion for Summary Judgment dismissing Plaintiffs` claims as requested below.

## INTRODUCTION

In the Complaint filed in this case, the Plaintiffs, Randolph H. Brinkley ("Brinkley") and Wilbur C. Trafton ("Trafton") (collectively, "Plaintiffs") assert claims against Defendant George D. French ("French") individually first, for "breach of contract" and second, for violation of Washington State wage laws RWC §49.48.010 and §49.52.050 . The Complaint on its face fails to state a cause of action against Defendant George French individually, and discovery has borne out that there are no material facts in dispute which could prove French is personally liable on any of the claims. French should be dismissed from suit as a matter of law.

## BACKGROUND AND FACTS

Brinkley and Trafton each brought individual lawsuits claiming they are owed monies pursuant to separate Employment Agreements ("Agreements") with Defendants and also claiming violation of Washington State wage statutes. The lawsuits were consolidated into the instant action.

### I. CONTRACT CLAIMS

***Parties to the Agreements***

The relevant portions of the Brinkley and Trafton Agreements are identical for purposes of this motion. It is undisputed that the signatories to the Agreements are Plaintiffs as individuals, and Kistler Aerospace Corporation, Rocketplane Limited, Inc., (referred to collectively in the Agreements as the "Company"), and French Properties, LLC. (Defendants' Proposed Findings of Fact ("PFOF") ¶ 1). French LLC is a signatory because it agreed to be joint and severally liable with the Company for all obligations under the Agreements. (PFOF ¶ 2). French, in his individual capacity is not a party to the Agreements. (PFOF ¶ 3).

## II. STATUTORY CLAIMS

### *Contingent Nature of Severance Benefits*

The Agreements provide that if, and only if, certain contingencies occur, Brinkley and Trafton are entitled to enumerated severance benefits. The first contingency is whether or not NASA awarded Rocketplane Kistler a substantial "COTS" (Commercial Orbital Transport System) contract worth approximately $200 million dollars. (PFOF ¶ 4). The Agreements provide, in section 5(h), that if the Company failed to obtain the COTS contract, severance is not owed.

> 5 (h) <u>Termination Because of Failure to Obtain COTS Contract</u>. In the event that the Company is not awarded a substantial contract (NASA Space Act agreement) of approximately $200 million under the NASA COTS initiative, the Company may terminate this Agreement as of December 31, 2006 and shall only be responsible for payment of Executive's Base Salary through December 31, 2006, any accrued but unused vacation; the amount of any unreimbursed expenses described in Section 2(f); and benefits Executive is then entitled to receive under applicable benefit plans of the Company, less standard withholdings for tax and social security purposes and the like, through the termination date of December 31, 2006. Additionally, the Company shall pay to Executive any Financing Incentive Payment at the time such payment becomes due with respect to any Financing transaction for which Executive is eligible to receive a Financing Incentive Payment pursuant to Section 4. The Company shall have no further obligation to pay any compensation of any kind or severance payment of any kind or to make any further payment in lieu of notice. All benefits provided by the Company to Executive under this Agreement or otherwise shall cease as of December 31, 2006.

(Compl., Attachment 1, Agreement section 5(h).

A second contingency is whether termination under the Agreement is for cause. (PFOF ¶ 5). If Plaintiffs are terminated for cause, they will be ineligible for severance benefits:

> 5 (b) <u>Termination for Cause</u>.
>
> (1) <u>Termination: Payment of Salary and Vacation</u>. The Company may terminate Executive's employment at any time for "Cause" (as defined below). In the event that Executive's employment is terminated under this Section 5(b), Executive shall receive payment for all earned but unpaid Base Salary; accrued but unused vacation time;

the amount of any unreimbursed expenses described in Section 2(f); and benefits Executive is then entitled to receive under applicable benefit plans of the Company, less standard withholdings for tax and social security purposes and the like, through the termination date. The Company shall have no further obligation to pay any compensation of any kind nor to make any payment in lieu of notice. All benefits provided by the Company to Executive under this Agreement or otherwise shall cease as of the termination date. Notwithstanding the foregoing, Executive may not be terminated for Cause unless Executive shall be granted the opportunity for a hearing before the Board at a special meeting, such hearing to be held within ten (10) days after Executive's receipt of a notice of termination if Executive requests such hearing within five (5) days after receipt of such Notice. If Executive is furnished written notice by the Board within ten (10) days after such hearing confirming that, in its judgment, grounds for termination for Cause exist on the basis set forth in the original notice of termination, 'Executive shall, subject to Section 50), be terminated for Cause as of the date of such confirmation by the Board.

(Compl., Attachment 1, Agreement section 5(b).

A third contingency is resignation, and whether the Plaintiffs resigned "for good reason". (PFOF ¶ 6).

> 5 (e) <u>Resignation without Good Reason</u>. Executive may resign his employment with the Company at any time with thirty (30) days advance notice to the Board (or such shorter period as the Board, after receiving Executive's notice may designate). In the event that the Board elects to terminate Executive's employment prior to the date of resignation set forth in Executive's notice, such termination shall be governed by this Section 5(e) and not by Section 5(b). In the event that Executive resigns his employment under this Section 5(e), Executive shall receive payment for any earned and unpaid Base Salary, as of the date of such termination (which for purposes of this Section 5(e), shall be the date set forth in such notice of termination up to a maximum of thirty (30) days from the date of such notice); accrued but unused vacation time; the amount of any unreimbursed expenses described in Section 2(f); and benefits Executive is then entitled to receive under applicable benefit plans of the Company, less standard withholdings for tax and social security purposes and the like, through the termination date. Additionally, the Company shall pay to Executive: (x) at the end of the calendar year in which Executive's termination occurs a pro rata portion of Executive's target incentive compensation for the calendar year in which Executive's termination occurs, prorated for Executive's actual employment period during such year and based on performance during such period, and (y) any Financing Incentive Payment at the time such payment becomes due with respect to any Financing transaction for which Executive is eligible to receive a Financing Incentive Payment pursuant to Section 4. The Company shall have no further obligation to pay any compensation of any kind or severance payment of any kind nor to make any further payment in lieu of notice. All benefits provided

by the Company to Executive under this Agreement or otherwise shall cease as of the termination date.

(Compl., Attachment 1, Agreement section 5(e).

Severance was therefore contingent, not "guaranteed," and the Parties have a significant factual dispute as to whether severance benefits were triggered and owed. Following the termination of Mr. Trafton (and later resignation of Mr. Brinkley), Mr. Kiehnle and other board members made no final decision on whether the Company was obligated, under the Agreement, to pay Mr. Trafton severance benefits. (PFOF, ¶ 7). The fact that neither Mr. French nor the Company was clear on whether Mr. Trafton was owed his severance benefits bears upon the claim of the Plaintiffs based on the Washington statutes.

### A. COTS Project Contingency In the Agreement

Whether severance benefits were owed to Plaintiffs was contingent on, among other things, whether or not NASA awarded Rocketplane "a substantial contract (NASA Space Act agreement) of approximately $200 million under the NASA COTS initiative…" (Agreement, section 5(h)) (PFOF ¶¶ 4, 9). NASA's decision to award Rocketplane Kistler the full $200 amount depended on whether the Company achieved certain technical and financial milestones. (PFOF, ¶ 10). While an initial amount of approximately $30 million was awarded to Rocketplane, the company failed to meet the remainder of the financial milestones, and thus the full ("substantial") $200 million contract was never awarded to Rocketplane. (PFOF ¶ 11). As Board Member James Stuart explained to Plaintiffs' counsel:

> **Q: I'm just going to follow up with one question on what Ms. Hooker was talking about, the COTS award. The 200 million wasn't awarded, correct?**
>
> A: Not that I understand. Not that I recall. It was a much smaller number.

- 5 -

Case 1:08-cv-00099-WCG    Filed 06/30/09    Page 5 of 15    Document 60

> Q: But—but that was supposed to be awarded over time, the various—as various milestones were met. $20 million this month, $30 million the next month, 7-1/2 million a month after that or two months after that; is that correct?
>
> A: Yes. Based on milestones achieved in that—those periods of time.
>
> Q: But in order to even get the first dollar, the award had to be made by NASA, correct—of the Space Act Agreement?
>
> [objections omitted]
>
> A: It struck me it was the same as the pool of incentive funds—incentive fees that I set up in the structure of compensation. There's a pool set, but you don't get the money. You're not awarded the money. You're not given the money until you meet a –you make certain milestones, it gives you a percentage of his pool. So there was a pool available to Rocketplane and they weren't awarded it. In my view, that's not an award, that's a pool just like on the incentive compensation. ***And as you make the milestones, you are awarded portions of that pool.***"

(POFF ¶ 30).

### B. *Corporate Governance and Decision-Making Authority*

Prior to joining Rocketplane Kistler, Mr. Brinkley was CEO of Kistler Aerospace Corporation ("Kistler"). Mr. Trafton was also on the management team of Kistler, serving as President and Chief Operating Officer. Kistler went bankrupt and French bought Kistler out of bankruptcy (PFOF ¶ 29) and merged Kistler with Rocketplane so that the new company, Rocketplane Kistler, was created to make bids on the NASA COTS project. (Id.). Mr. Brinkley became the President and later, the CEO, of Rocketplane Kistler. (PFOF ¶ 12). He brought Mr. Trafton on board as Executive Vice President for Business Development. (PFOF ¶ 13). Brinkley directly supervised Trafton, including day to day management. (PFOF ¶ 14).

Mr. French was initially CEO and Chairman of the Board of Rocketplane Kistler but by the time of the events triggering this lawsuit, he had handed over the CEO duties to Mr. Brinkley. (PFOF ¶ 15). As Mr. Brinkley testified:

- 6 -

> A: At the operating level of Rocketplane Kistler, there was the chairman of the board George French, but the chairman of the board was not the CEO. That was changed. Before we went to the market, I was the CEO. So the president and the CEO were not one and the same subsequent to these bylaws.

(PFOF ¶ 19).

Mr. French was responsible for raising capital. He invested everything he had in the Company, and infused it with cash in order to keep it afloat. (PFOF ¶ 16). He deferred his salary. (PFOF ¶ 17). He acted in consultation with the Board members and in keeping with the corporate by-laws setting forth the powers and duties of the officers (PFOF ¶¶ 18, 21). The by-laws do not give any individual the power to act unilaterally. (PFOF ¶ 20).

There were four individuals involved in the decision-making regarding the decision to terminate Trafton and others at Rocketplane Kistler: Randy Brinkley, George French, Bob Kiehnle and Craig Dickman (collectively, "decision-makers"). Kiehnle was interim CFO and subsequently assistant CFO. (PFOF ¶ 21).

The decision to terminate certain Rocketplane Kistler employees, including Trafton, was triggered by the financial failure of the Company, which was caused by various outside factors such as: (1) the fall of the markets at the beginning of the subprime market crisis); (2) the failure of NASA to complete the award of the $200 million COTS ("Commercial Orbital Transfer Service") contract, and (3) the withdrawal of outside funding from McDonald Detwiller Association ("MDA") (PFOF ¶¶ 22, 24). Trafton's performance was also an issue, as he was head of "business development" and the record shows that business was not developed so as to meet the NASA milestones. (PFOF ¶ 27).

The decision-makers, including Brinkley, discussed the fact that there was no money to continue operations as usual, and terminations were necessary. (PFOF ¶ 21). Brinkley agreed cuts had to be made:

> A: …it was obvious to all of us, particularly the CFO and myself, that we had to adjust our operating costs, to reduce them in order to give ourselves a longer period of time to complete the second round of investment. We deferred salary. Some of the people on the Rocketplane side were laid off.
>
> (PFOF ¶ 22 ).

Mr. Kiehnle concurred, recommending that the immediate financial needs of the Company necessitated terminations occur. (PFOF ¶ 21). Mr. Dickman testified:

> A: Okay. I did become aware that terminating Will [Trafton] was being discussed. Specifically the company's chief financial officer, Bob Kiehnle, had raised an issue with Randy, with George, and with myself that the company was not going to have funds to maintain its payroll and that the company had to reduce the money that was being spent or was not going to meet the fiduciary requirements that existed, and as I also recall, Mr. Kiehnle had said, "If the company's not taking these actions, then I'm out of here because I'm not going to be part of knowing that we're keeping people on the payroll and we don't have funds to pay for them"…

(PFOF ¶ 23).

The financial troubles stemmed from the fact that NASA did not continue with the COTS payments (because the Company failed to meet NASA "milestones") and this in turn prompted the terminations. *"**All the personnel decisions at that point were driven by the fact that NASA didn't provide the money that the company expected and didn't have the cash flow to pay the people.**"* (PFOF ¶ 25). Board member and former Joint-Chief of Staff member General Merrill A. McPeak concurred that the lack of funding by NASA contributed to the Company's downfall. (PFOF ¶ 24). The Company was basically "insolvent" at the time of the terminations and a

- 8 -

Case 1:08-cv-00099-WCG   Filed 06/30/09   Page 8 of 15   Document 60

request from the Board of Directors to pay severance would have forced the Company into bankruptcy. (PFOF ¶ 26).

## **STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]he mere existence of an alleged factual dispute between the parties is not sufficient to defeat a motion for summary judgment." Spath v. Hayes Wheels Intl.-Ind., Inc., 211 F.3d 392, 396 (7th Cir. 2000) (citing Anderson, 477 U.S. at 252).

# ARGUMENT

## I. SUMMARY JUDGMENT ON PLAINTIFFS' FIRST CAUSE OF ACTION, BREACH OF CONTRACT, IS WARRANTED BECAUSE PLAINTIFFS HAD NO CONTRACT WITH GEORGE D. FRENCH AS AN INDIVIDUAL.

Summary judgment procedure first requires an assessment of the adequacy of the pleadings. Grams v. Boss, 97 Wis.2d 332, 338-9 (1980). Plaintiffs' Breach of Contract claim should be dismissed on the basis of the Complaint alone, which fails to state facts sufficient to state a claim against Mr. French in a personal capacity.

The Complaint is clear that the contracts at issue were entered into between Plaintiffs and `the Company`, which is defined in the Agreements as both Kistler Aerospace Corporation and Rocketplane Limited, Inc. (Complaint, ¶3.1, Attachment 1). The Agreements were signed by the Plaintiffs and Mr. French *on behalf of the Company*. (Id.). Plaintiffs do not allege that Mr. French personally entered into any contract, and extensive discovery shows there were no other contracts besides the employment agreements at issue.

Plaintiffs do not allege, nor has there been any evidence, that Mr. French signed a personal guaranty. Plaintiffs do not allege, and there is no evidence, that they believed Mr. French was contracting with them personally. Further, the Complaint does not allege fraud or misrepresentation or any facts that would support piercing the corporate veil, and again, no facts have come out during discovery that would support disregarding the corporate form.

It is black-letter law that a corporation's shareholders or officers are not individually liable for contracts entered into by the corporation. Further, a corporation's separate legal identity is not lost merely because all of its stock is held by members of a single family or by one person. Grayson v. Nordic Const. Co., Inc. 92 Wash.2d 548, 599 P.2d 1271 (Wa. 1979). The existence of the corporate entity separate from the individual shareholders will be respected

absent fraud. Block's Investment Company, v. Olympic Health Spa, Inc., 24 Wash. App. 938, 944, 604 P.2d 1317, 1322 (Wa. App. 1979). The Court must find 'an abuse of the corporate form' or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment. Truckweld Equip. Co. v. Olson, 26 Wash. App. 638, 645, 618 P.2d 1017, 1021 (1980).

Not only is there absolutely no evidence that Mr. French manipulated the corporation to his benefit, the overwhelming evidence is that he infused large amounts of cash into the company in order to keep it going. (POFF ¶ 16). He deferred his own salary for the good of the company. (POFF ¶ 16). It is undisputed that the Company was in dire straights and that company decision-makers as a group determined that certain employees had to be let go. (PFOF ¶¶ 22-26).

Given that Mr. French was not a party to Plaintiffs' Agreements and there are no allegations or evidence that warrant piercing the corporate veil, the contract claim against French in his individual capacity must be dismissed.

## II. AS A MATTER OF LAW DEFENDANT FRENCH CANNOT BE PERSONALLY LIABLE UNDER RCW §49.48.010 AND §49.52.050.

### A. The Undisputed Facts Show that Mr. French Was Not an "Employer" under RCW §49.48.010.

For the same reasons that French cannot be personally liable for breach of contract, Plaintiffs have no legal basis to make an individual claim against him under Washington wage law, and summary judgment should be granted dismissing him personally.

Section 49.48.010 makes it unlawful for any *employer* to withhold or divert any portion of an employee's wages, subject to certain inapplicable exceptions. Plaintiffs have not presented any evidence that French personally employed them. In fact, the plain language of the Agreement show that it was the Company that was Plaintiffs employer. Section 1 of the

Agreement states: "Employment by the Company and Term" and further states that "the Company agrees to employ [Plaintiff]..." (Compl., Attachments 1 and 2). Further, the Agreement expressly provides that exclusive liability for all obligations under the Agreement lie with "the Company" and French Properties, LLC. Nowhere does the Agreement bind French in his personal capacity, and he did not sign the Agreement in his personal capacity.

In addition, French did not act as either Brinkley's or Trafton's employer. It is undisputed that he had no direct supervision of either Plaintiffs--Brinkley was President and later, CEO, and Brinkley brought Trafton on board and supervised him daily. (PFOF ¶¶ 13-14). The decision to terminate Trafton was made by individuals on the Board, and the Board also discussed and decided whether there was an obligation to pay severance benefits. (PFOF ¶¶ 21-24 and ¶¶ 7-8).

It is impossible to see how French could be the "employer" of either Plaintiff. Further, what little case law there is addressing personal liability under § 49.48.010 shows that courts are reluctant to hold an individual liable with no evidence that the corporate form should be disregarded. Ellerman v. Centerpoint Prepress, Inc., 84 Wash.App. 1066, (Not Reported in P.2d), 1997 WL 11978 (Wa. App. 1997). There is no issue of material fact that would support a finding of French's personal liability as "employer" under § 49.48.010.

### B. There Are No Facts Which Show That *Any* of the Defendants Acted 'Willfully" in Not Paying Severance Benefits, Therefore Plaintiffs' Third Cause of Action Should Be Dismissed Against All Defendants.

Section 49.52.050, referred to as the "Anti-Kickback statute," were enacted to prevent employer abuses in the labor-management setting, for example to prevent employers from coercing rebates from employees in order to circumvent collective bargaining agreements. McDonald v. Wockner, 44 Wash.2d 261, 269-71, 267 P.2d 97 (1954). The statute has also been

applied to settings in which there is *a bad faith* withholding of wages due for work performed. Ebling v. Gove's Cove, Inc., 34 Wash.App. 495, 500, 663 P.2d 132 (1983).

In order to prove a damage claim under §49.52.050, Plaintiffs must prove an employer willfully withheld wages or salary:

> Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of subdivisions [RCW 49.52.050(2)] shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees...

(RCW §49.52.070).

Although willfulness is a question of fact (Bates v. City of Richland, 112 Wash.App. 919, 939, 51 P.3d 816)), "where the facts are undisputed and reasonable minds could not differ, [a court] may determine the issue as a matter of law. State v. Clark, 129 Wash.2d 211, 225, 916 P.2d 384 (1996); Bates, 112 Wash.App. at 939, 51 P.3d 816.

Washington courts have established two instances when an employer's failure to pay wages is not willful: (1) if "the employer was careless or erred in failing to pay; or (2) if there exists a 'bona fide' dispute between the employer and employee regarding the payment of wages." Morgan v. Kingen, 141 Wash.App. 143, 169 P.3d 487 (Wash.App.); Bates at 939, 51 P.3d 816 (the existence of a bona fide dispute is enough to preclude a finding of willfulness).

Here, the facts are undisputed that there is a "bona fide" dispute concerning whether Rocketplane Kistler owed Plaintiffs severance benefits under the Agreements, given the fact that severance benefits were contingent on the NASA COTS contract award of about $200 million and NASA did not award anywhere near the full $200 million (and especially since the lack of award was due to the failure of Rocketplane Kistler to meet financial milestones. The issue of

Trafton's performance is also legitimately at issue, as he was head of "business development" and the record shows that business was not developed so as to meet the NASA milestones.

Therefore it is undisputed that there is a "bona fide dispute" as to whether severance benefits are owed under the Agreement, barring a claim for damages under § 49.52.050. This wage claim should therefore be dismissed as a matter of law against <u>all</u> Defendants. At the very least, the Defendants respectfully request dismissal of Mr. French individually as the evidence shows he did not make either the termination decision nor the severance decision unilaterally and without reasonable grounds.

The testimony is undisputed that the Board of Directors as a group (including Brinkley, French, Craigman, Stuart and Kiehnle), rather than French alone, discussed and jointly decided to terminate Trafton based on business necessity, and to investigate whether the terms of the Agreements warranted payment of severance benefits. (depo cites re: decision to withhold severance).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that (1) the Court grant summary judgment dismissing George D. French from all causes of action; (2) all Defendants be dismissed from Plaintiffs' Third Cause of Action, violation of RCW §49.52.050.

Dated this 30th day of June, 2009.

                                      /sDawn M. Korver
                                      Thomas M. Olejniczak
                                      Dawn M. Korver
                                      Attorney for Defendants
                                      LIEBMANN, CONWAY, OLEJNICZAK & JERRY, S.C.

231 South Adams Street
Green Bay, WI 54301
P. O. Box 23200
Green Bay, WI 54305-3200
Telephone: (920) 437-0476
Fax: (920) 437-2868
E-mail: tmo@lcojlaw.com
dmk@lcojlaw.com
State Bar Nos. 1015820
1058813

#548342