UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN AT GREENBAY

| | | |
|---|---|---|
| WILBUR C. TRAFTON, | ) | NO. 08-C-0099 |
| Plaintiff, | ) | |
| v. | ) | |
| ROCKETPLANE KISTLER, INC., ROCKETPLANE LIMITED, INC., ROCKETPLANE, INC., FRENCH PROPERTIES L.L.C. AND GEORGE D. FRENCH JR., | ) | |
| Defendants. | ) | |
| RANDOLPH H. BRINKLEY, | ) | NO. 08-C-0642 |
| Plaintiff, | ) | |
| v. | ) | |
| ROCKETPLANE KISTLER, INC., ROCKETPLANE LIMITED, INC., ROCKETPLANE, INC., FRENCH PROPERTIES L.L.C. AND GEORGE D. FRENCH JR., | ) | |
| Defendants. | ) | |

**PLAINTIFFS TRAFTON'S AND BRINKLEY'S RESPONSE TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

1

# I. INTRODUCTION

The defendants move to dismiss George French individually from the first cause of action for breach of contract and from the second cause of action, because, they allege, he was not an employer under RCW 49.48.010. They also move to dismiss all the defendants from the claims of the plaintiffs that their actions violated RCW 49.52.050 because there are no facts supporting the claim that they acted "willfully" by not paying the severance benefits set forth in the employment agreements. For the reasons stated below, defendants' motion should be denied.

Trafton and Brinkley rely on the facts and arguments alleged in the brief supporting their motions for summary judgment filed on June 30, 2009, the declarations filed in support of their motions, their proposed findings of fact, all of which are incorporated herein, the facts and arguments below, and the Supplemental Declaration of Jon Howard Rosen.

A. <u>Because there are facts that, if believed by a fact finder, would warrant a piercing of the corporate veil, defendants' motion that plaintiffs' complaints fail to state a cause of action against George French, individually, should be denied.</u>

   1. <u>Personal liability attaches to shareholders of corporations and members of limited liability companies when they act in a way that ignores the corporate form.</u>

Whether the corporate form should be disregarded so that personal liability could attach to a shareholder is a question of fact. *McCombs Construction, Inc. v. Barnes*, 32 Wn. App. 70, 76, 645 P.2d 1131 (Div. 3, 1982), citing *Truckwell Equipment Co. v. Olsen*, 26 Wn. App. 638, 643, 618 P.2d 1017 (Div. 2, 1980). "[C]ourts have pierced the corporate veil and imposed personal liability where the corporate entity has been disregarded by the principles themselves so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to

2

exist. *McCombs Construction Co., Inc., Id.* The same principles hold true for limited liability companies. See *Dickens v. Alliance Analytical Laboratories, LLC*, 127 Wn. App. 433, 111 P.3d 889 (Div. 3, 2005). (Members of a limited liability company shall be personally liable . . . to the extent that shareholders . . . would be liable in analogous circumstances.")

To pierce the corporate veil, two separate essential factors must be established. First, the corporate form must be intentionally used to violate or evade a duty and, second, the fact finder must establish that disregarding the corporate veil is necessary and required to prevent an unjustified loss to the injured party. *Id.* at 440-41, citing *Meisel v. M&N Modern Hydraulic Press Co.*, 97 Wn.2d 403, 410, 645 P.2d 689 (1982).

> 2. <u>Here, there are facts that strongly suggest that the corporate veil should be pierced because of the way Mr. French ran the companies as his own to the detriment of shareholders and employees.</u>

There is no dispute that Mr. French "ran" the companies. As James R. Stuart, a Rocketplane Kistler Board member, put it:

> Q     And who is the chief executive officer of the current Rocketplane Kistler?
>
> A     I would -- I'm not sure. George runs it. He's also chairman.
>
> Q     Yes.
>
> A     And he makes the decisions . . . .

Deposition of James R. Stuart, 16:18-23 (attached as Exhibit 4 to the Declaration of Jon Howard Rosen filed in this matter on June 30, 2009.) French, himself, acknowledges his role as "decision maker." See French Deposition, 64:15-65:7, Exhibit 1 to the Declaration of Jon Howard Rosen filed on June 30, 2009.

3

Moreover, Mr. French treated the companies as his own, doing with it as he wished, disregarding the rights of other shareholders (including Trafton and Brinkley) and employees, and ignoring the advice of his chief executive. Brinkley Declaration, ¶ 23.

He attempted during the summer of 2007, when it had become clear that the company was beginning to founder, to rearrange the terms of loans he had personally previously made to the companies in a manner more favorable to himself. His actions were of such concern that the long-time counsel for the companies, Ragan Powers, felt not only that he had the ethical obligation to bring this issue to the attention of the Board of Directors but to "not to participate further in the transactions involving loans between one or more of the companies and George French." Email from Ragan Powers to Board of Directors; Deposition of Ragan L. Powers, 21:13-21 (Rosen Supplemental Declaration, Exhibits 1 and 2).

When asked in his deposition whether there were any other limited liability companies or other business entities besides French Properties, LLC and the other businesses he had earlier described, Mr. French responded "no, I don't think so. No, I don't think so." French deposition, 22:4-7 (Rosen Supplemental Declaration, Exhibit 3). Later, after he paid certain costs to counsel for plaintiff during discovery with a check from another limited liability company he was asked to explain what that other company was. He testified:

> A     Actually, that's -- that's our wiring account. I believe that that is the account we use to wire funds to different places.
>
> Q     Who is "we?"

4

A      Kim at my office.

Q      Well, does she have an interest in GD French Investments, LLC?

A      No.

Q      Is that an LLC that you own?

A      Yes.

Q      100%?

A      Yeah, I believe, I believe. I'd have to check that but we: I'm not sure that there is anything in that account except for use for wiring.

Q      Well, where does money come from to wire?

A      We usually put it into that account and wire it.

Q      From where?

A      Pretty much – if this is our wiring account, it's pretty much anything. It's what we use as our wiring. It's a bank-approved place, and we put it in there, and we wire it.

Q      Well, but here you wrote a check on it.

A      And it also has checks.

Q      And it's Check Number 1034?

A      yes.

Q      Did you start at 001 or 1001?

A      I don't know.

Q      Where would the other canceled checks be?

A      Our office.

5

> Q How long has this LLC been in place?
>
> A I don't know.
>
> Q It was formed prior to November 18, 2008; wasn't it?
>
> A yes.
>
> Q Okay. It was formed at least sometime in early 2007, I believe?
>
> A I don't know. I don't remember. It would be at Ole's office.
>
> Q Rather than making this an exhibit for now, does this (indicating) refresh your recollection as to when it was formed or at least when it was registered?
>
> A Oh, that helps. Yeah.
>
> Q What's your recollection?
>
> A My recollection is that we could call Johnson Bank and find out.

French Deposition, 258:6-260:3 (Rosen Supplemental Declaration, Exhibit 4). A review of the records of Johnson Bank shows that the authorized signers for GD French Investments, LLC are George French and Kim Ward. Rosen Supplemental Declaration, Exhibit 5. These are the same authorized signers for the account for Rocketplane Kistler, Inc. at Johnson Bank. Rosen Supplemental Declaration, Exhibit 6. It is undisputed that Kim Ward "is an agent of Mr. French and his entities." Ward Deposition, 4:24-25 (Rosen Supplemental Declaration, Exhibit 7).

The Johnson Bank records that were produced pursuant to a subpoena duces tecum, Rosen Supplemental Declaration, Exhibit 8, contain, among many other documents that might be relevant at trial, numerous canceled checks to board members of the companies, including James R. Stuart, Merrill McPeak, Mr. Brinkley, various

6

law firms retained by Mr. French for litigation in which he is named personally as a defendant, Orde Sign & Graphics, Inc.,[1] Mr. French's children, and The Rosen Law Firm for costs in this matter, among other payees. Rosen Supplemental Declaration, Exhibit 9.

These facts, along with the typically evasive answers and responses of Mr. French to plaintiff Trafton's interrogatories and requests for production to French Properties, LLC, Rosen Supplemental Declaration, Exhibit 10, creates a sufficient factual question about Mr. French's personal liability for breach of the employment agreement that only the jury can decide.

3. The above factual issues also preclude finding as a matter of law that Mr. French was not an "employer" under RCW 49.48.010.

Defendants misapply an unpublished 1997 Washington Court of Appeals' decision that simply does not hold what they contend. In that decision and in the later affirmance by the Washington Supreme Court in *Ellerman v. Centerpoint PrePress, Inc.*, 143 Wn.2d 514, 522 P.3d 795 (2001), it was found that the individual defendant, the business manager for the employer, was not liable for the remedies set out in RCW 49.52.070 because there was an insufficient showing that he "had some control over the payment of wages" which is necessary "before personal liability attaches." *Id.* at 523. This difference is fatal to defendants' argument here where it is undeniable that Mr. French not only ran the company but controlled the decision with regard to payment of the severance and other benefits to Trafton and Brinkley.

---

[1] This is a company owned by Mr. French's wife. French Dep. 23:5-12 (Rosen Supplemental Declaration, Exhibit 3.

7

Case 1:08-cv-00099-WCG   Filed 07/30/09   Page 7 of 13   Document 71

B.  Disputed issues of fact preclude summary judgment for Mr. French and the business entities on Trafton's and Brinkley's claim for violations of RCW 49.52.050.

On July 2, 2009 the Washington Supreme Court affirmed the Court of Appeals' decision in *Morgan v. Kingen*, 141 Wn. App. 143, 169 P.3d 478 (Div. 1, 2007). *Morgan v. Kingen*, ___ Wn.2d ___, 210 P.3d 995 (2009). The Court, holding that even bankruptcy of a company doesn't shield individual decision makers from the remedies in RCW 49.52.070 imposed on violators of RCW 49.52.050, reaffirmed its earlier holding in *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 961 P.2d 371 (1998) that "willfulness is found where 'the employer's refusal to pay [is] volitional . . . . Willful means "merely that the person knows what he is doing, intends to do what he is doing, and is a free agent."'" *Morgan* at 998. (Internal citations omitted.) "The test for 'willful' failure to pay has not been stringent." *Schilling* at 159-160.

The Washington Supreme Court reaffirmed its decision in *Schilling* that there are only two established instances that negate a finding of willfulness: where the employer was careless or erred in failing to pay, or where a "bona fide" dispute existed between the employer and the employee regarding the payment of wages. *Morgan* at 998. Here, defendants cannot establish either instance as a matter of law. Indeed, they do not claim protection under the "careless" prong.

RCW 49.52.050 and 49.52.070 are to be liberally construed. See, *e.g.*, *International Association of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 34, 42 P.3d 1265 (2002) ("We have previously recognized Washington's 'long and proud history in being a pioneer in the protection of employee rights.'"); *Schilling* at

159; *Morgan*, 141 Wn. App. at 152.

Ordinarily, the issue of whether an employer acts "willfully" for purposes of RCW 49.52.070 is a question of fact. *Schilling* at 160, citing *Pope v. University of Washington*, 121 Wn.2d 479, 490, 852 P.2d 1055, 871 P.2d 590 (1993), *cert denied*, 510 U.S. 1115, 114 S.Ct. 1061, 127 L.Ed.2d 381 (1994); *Lillig v. Becton-Dickinson*, 105 Wn.2d 653, 659, 717 P.2d 1371 (1986). "Wages" includes severance pay. *Dice v. City of Montesano*, 131 Wn. App. 675, 687-88, 128 P.3d 1253 (Div. 2, 2006).

For a dispute to be bona fide it must be "fairly debatable." *Schilling* at 161. Defendants now rest their contention that there was a bona fide dispute on paragraph 5(h) of the employment agreements. A reading of that paragraph in the agreement, especially when viewed along with the facts that are not in dispute, reveals the weakness of defendants' arguments.

First, under the specific terms of paragraph 5(h), the company reserves the right to terminate Trafton and Brinkley without having to pay severance pay (or certain other forms of compensation) if there is a "failure to obtain a COTS contract by December 31, 2006." It is abundantly clear, and has been admitted by Mr. French, Mr. Dickman, and company directors, that the contract was awarded. See page 6 of Trafton's and Brinkley's Brief in Support of their Motions for Partial Summary Judgment and the references to the record therein. Further, there certainly can be no question but that Trafton and Brinkley worked well past the December 31, 2006 date by which time the company could have been able to terminate them without severance if there was no COTS agreement, into the late summer and fall, respectively, of 2007.

9

Besides the devastating admissions of French, Dickman, Byrd, and McPeak that the COTS Agreement was awarded, defendants did not even raise this argument until this litigation was underway despite every opportunity to do so much earlier such as when Trafton and Brinkley made their initial demands for severance pay or later when counsel sent a follow up demand for them. See pages 11 and 12 of Trafton's and Brinkley's Brief in Support of their Motions for Partial Summary Judgment, the references to the record therein, and the letters from counsel to the company dated October 23, 2007 and April 2, 2008 (Rosen Supplemental Declaration, Exhibits 11 and 12). Indeed, the only pre-litigation indication of any excuse for not paying severance – other than there were insufficient funds, which is no excuse at all -- is the undated letter to Trafton received in early November 2007 informing him that the company considered that he had resigned for other than good reason and was not entitled to severance. See Trafton Declaration, ¶ 15, Exhibit 5, filed on June 30, 2009.

The argument that paragraph 5(h) should be interpreted in a way so that the right to severance would not vest until after NASA had paid Rocketplane Kistler, Inc. more than $200 million makes no sense. In accordance with the Space Act Agreement, the parties did not contemplate full funding until August 2012. Brinkley Declaration, Exhibit 3, pp. 46-53. Trafton's and Brinkley's contracts have termination dates of no more than three years. See, *e.g.*, Brinkley Declaration, Exhibit 2, p. 1 (¶ 1(a)). Full funding under the COTS Agreement was not to occur until more than three years after the latest termination dates of the employment agreements. This argument is no more than a continuation of the willfulness and disingenuousness exhibited by

10

Mr. French since before he terminated Trafton without cause.

Finally, defendants' unsubstantiated statement at page 14 of its brief that "the Board of Directors as a group (including Brinkley, French, Craigman [sic], Stuart and Kiehnle), rather than French alone, discussed and jointly decided to terminate Trafton based on business necessity . . ." is contradicted by the Board members themselves.[2] Board member William J. Byrd, for example, testified that he had no role in the decision to terminate Trafton.

> Q     Are you aware that Mr. Trafton was terminated?
>
> A     Yes.
>
> Q     When did you become aware of that?
>
> A     I'm going to say it would have been about the summer of '07.
>
> Q     And how did you become aware of that fact?
>
> A     I'm not sure if it was by an e-mail or word of mouth from George. I'm not sure how I heard.
>
> Q     Did you direct Mr. French to terminate Will Trafton?
>
> A     No.

---

[2] Significantly, there is no evidence that Brinkley, Dickman or Kiehnle were members of the Board of Directors in August 2007. They were not. In their initial disclosures, Rosen Supplemental Declaration, Exhibits 13 and 14, identify the Board members at paragraphs 8 and 9 of each initial disclosure. None of these gentlemen is listed.

Deposition of William J. Byrd, 33:21-34:9 (Rosen Supplemental Declaration, Exhibit 15).[3]

Gen. McPeak testified consistently with Mr. Byrd:

Q   Do you know one way or the other whether Mr. French was the individual who, either by himself or with others, terminated Mr. Trafton?

A   I do not know one way or the other.

Deposition of Merrill A. McPeak, 48:9-12. Rosen Supplemental Declaration, Exhibit 16.

## CONCLUSION

If anything, the facts overwhelmingly indicate that the defendants and each of them did willfully withhold wages from Trafton and Brinkley. But because this is a factual question, Trafton and Brinkley did not move for summary judgment. Certainly the defendants are not entitled to summary judgment on this issue.

With regard to French's personal liability for breach of the employment agreement and whether he is an "employer", the question is closer. However, his overall conduct must be viewed in the context of his behavior during 2007 and to the

---

[3] At the beginning of his deposition Mr. Byrd testified as to what he had done to prepare for that deposition. He said he spoke with Mr. French and asked him "what the issue was, how did we get to this point, what was he expecting." He then testified that "[French's] answer was Will and Randy were both wanting us to pay their severance and all the various terms of their employment agreements even though there wasn't any money to do so." Deposition of William Byrd, 7:13-25. *Id.* Later in the deposition when asked whether he was encouraging Mr. French to replace Mr. Trafton he answered "yes, but I knew that wasn't possible with the terms of the agreement. With the company being healthy, there wasn't any – unless Will left – it was my understanding of the agreement, unless he left of his own free will, there was going to be some penalty of some kind that we would have to pay to Will to let him go." He was then asked if by "penalty" he meant severance. He answered, "right. There were – it could have been back pay or it could have been unearned bonuses or whatever, a penalty meaning payments beyond the time he's working." Deposition of William Byrd, 30:22-31:15. *id.*

12

present. This is a question for the fact finder to determine not the court as a matter of law. All inferences, of course, must be made in a light most favorable to the non-moving party.

Defendants' motion for summary judgment should be denied.

Respectfully submitted this 30th day of July, 2009.

THE ROSEN LAW FIRM

By: _____
Jon Howard Rosen, WSBA# 7543
Attorneys for Plaintiffs
705 2nd Avenue, Suite 1200
Seattle, WA 98104-1798
(P) 206/652-1464
(F) 206/652-4161
jhr@jonrosenlaw.com


DAVIS & KUELTHAU, S.C.

By: _____
Kathy L. Nusslock, Wisc. Bar #1014027
Daniel G. Vliet, Wisc. Bar #1010154
Attorneys for Plaintiffs
111 East Kilbourn Avenue, Suite 1400
Milwaukee, WI 53202
(P) 414/225-1447 (Nusslock)
(P) 414/225-1422 (Vliet)
(F) 414/278-3647 (Nusslock)
(F) 414/278-3622 (Vliet)
knusslock@dkattorneys.com
dvliet@dkattorneys.com

13